Spencer C. Skeen CA Bar No. 182216
spencer.skeen@ogletree.com
Jesse C. Ferrantella CA Bar No. 279131
jesse.ferrantella@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.
4370 La Jolla Village Drive, Suite 990
San Diego, CA  92122
Telephone:    858-652-3100
Facsimile:    858-652-3101

Attorneys for Defendant NESTLÉ WATERS NORTH AMERICA, INC.

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOSE PABLO JIMENEZ, as an individual and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NESTLE WATERS NORTH AMERICA, INC., a Delaware corporation; and DOES 1 through 50, inclusive,<br><br>Defendant. | Case No. _____<br><br>**CLASS ACTION**<br><br>**NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT**<br><br>[28 U.S.C. § 1332(d) (Class Action Fairness Act)]<br><br>*[Filed concurrently with Civil Cover Sheet; Notice of Party with Financial Interest; and Declarations of Nancy DiRienzo and Jesse C. Ferrantella]*<br><br>Complaint Filed:  November 2, 2020<br>Trial Date:          Not Set |

Defendant Nestlé Waters North America, Inc. ("Nestlé Waters") removes this putative class action to the United States District Court for the Eastern District of California under 28 U.S.C. § 1332(d) (the Class Action Fairness Act ["CAFA"]) and § 1446 because (1) Nestlé Waters is a citizen of a state different than Plaintiff; (2) the number of members of all proposed plaintiff classes in the aggregate is over 100; and (3) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs. All CAFA requirements are satisfied.

The foregoing facts were true when Plaintiff filed his Class Action Complaint ("Complaint") and remain true as of the date of filing this Notice of Removal. Removal jurisdiction is therefore appropriate as detailed more fully below.

## I. STATE COURT ACTION

1. Plaintiff filed his Class Action Complaint on November 2, 2020 in the Kern County Superior Court ("Action"). The Action was assigned Case No. BCV-20-102561. Declaration of Jesse C. Ferrantella ["Ferrantella Decl."], ¶ 2; Ex. 1 (Complaint). A copy of the Class Action Complaint is attached as **Exhibit 1**.

2. Plaintiff served his Complaint on Nestlé Waters on November 13, 2020. (*Id*. ¶ 3, Ex. 2.) A copy of the proof of service is attached as **Exhibit 2.**

3. On December 11, 2020, Nestlé Waters filed an Answer to Plaintiff's Class Action Complaint in the Kern County Superior Court. (Ferrantella Decl., ¶ 4, Ex. 3.) A copy of the Answer is attached as **Exhibit 3.**

## II. REMOVAL IS TIMELY

4. Under 28 U.S.C. § 1446(b) and Federal Rule of Civil Procedure 6(a), Nestlé Waters' deadline to remove the Action is December 14, 2020. *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 US 344, 354 (1999). This removal is timely.

## III. REMOVAL IS PROPER UNDER CAFA

5. Removal is proper given Plaintiff's allegations and claims. Plaintiff's Complaint asserts: (1) Violation of California Labor Code §§ 510, 558 and 1194 (Overtime); (2) Violation of California Labor Code §§ 226.7 and 512 (Meal Period Premiums); (3) Violation of California Labor Code § 226.7 (Rest Period Premiums); (4) Violation of California Labor Code §§ 201

through 203 (Failure to Timely Pay Wages); (5) Violation of California Labor Code § 226(a) (Non-Compliant Wage Statements); and (6) Violation of California Business & Professions Code §§ 17200, *et seq*. (Ex. 1, Complaint.) It also asserts a violation of the Private Attorneys General Act of 2004, Labor Code §§ 2698 *et seq*. (*Id.*)

6. CAFA grants district courts original jurisdiction over civil class action lawsuits filed under federal or state law in which (1) any member of a class of plaintiffs is a citizen of a state different from any defendant; (2) the number of members of all proposed plaintiff classes in the aggregate is over 100; and (3) where the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs. 28 U.S.C. § 1332(d). CAFA authorizes such removal under 28 U.S.C. § 1446.

7. This Court has original jurisdiction over the Action under CAFA because it is a civil case filed as class action wherein at least one member of the putative class is a citizen of a State different from Nestlé Waters, the number of individuals in the proposed classes in the aggregate is over 100, and the matter in controversy exceeds $5,000,000, exclusive of interest and costs.

**A.   CAFA's Diversity of Citizenship Requirement is Satisfied**

8. CAFA's diversity requirement is satisfied "so long as 'any member of a class of plaintiffs is a citizen of a State different from any defendant.'" *Bradford v. Bank of Am. Corp.*, No. CV 15-5201-GHK (JCX), 2015 WL 5311089, at *3 (C.D. Cal. Sept. 10, 2015) (citing *California v. IntelliGender, LLC*, 771 F.3d 1169, 1172 (9th Cir. 2014)); 28 U.S.C. §§ 1332(d)(2), 1453(a), (b).

9. Plaintiff is a resident of the State of California within the meaning of 28 U.S.C. § 1332(a). (Declaration of Nancy DiRienzo ["DiRienzo Decl."], ¶ 9.)

10. At all relevant times, Nestlé Waters has been a citizen of Connecticut and Delaware. Under 28 U.S.C. § 1332(c)(1), a corporation shall be deemed to be a citizen of every State and foreign state which it has been incorporated and of the State or foreign state where it has its principal place of business. A company's "'principal place of business' refers to the place where the corporation's high level officers direct, control, and coordinate the corporation's activities," *i.e.*, the corporation's "nerve center." *Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1192 (2010). The "nerve center" is normally where the corporation maintains its headquarters. *Id.*

11. At all relevant times, Nestlé Waters has been a company organized under the laws of Delaware, with its principal place of business in Stamford, Connecticut. Nestlé Waters' principal place of business is in Connecticut because its headquarters are located there, and that is where Nestlé Waters' executive management directs, controls, and coordinates its activities. Nestlé Waters has not been incorporated in California and has not had its headquarters, executive offices, or principal place of business in California. (DiRienzo Decl., ¶¶ 2-5.) Accordingly, Nestlé Waters is a citizen of Connecticut and Delaware, and not a citizen of California.

12. Minimal diversity is established because Plaintiff is a citizen of California and Nestlé Waters is not; it is a citizen of Connecticut and Delaware. Removal is therefore proper under 28 U.S.C. § 1332(d). *Serrano v. 180 Connect Inc.*, 478 F.3d 1018, 1019 (9th Cir. 2007).

### B. CAFA's Class Size Requirement Is Satisfied

13. Plaintiff brings the Action pursuant to California Code of Civil Procedure § 382 on behalf of numerous subclasses (collectively defined as the "Class"), including persons that fall within this category:

> All current and former non-exempt employees of Defendants in the State of California, who worked more than 3.5 hours in any shift, at any time from May 6, 2016, through the present (Complaint, ¶ 17 (c).)

14. From May 6, 2016 through the date of this Notice of Removal, Nestlé Waters employed, in the aggregate, at least 861 employees in the putative class. (DiRienzo Decl. ¶ 6.) Thus, CAFA's size requirement is satisfied.

### C. CAFA's Requisite $5 Million Amount In Controversy Is Satisfied

15. CAFA authorizes the removal of class action cases in which the amount in controversy for all class members exceeds $5 million. 28 U.S.C. § 1332(d).

16. Under CAFA, the "District Court [must] determine whether it has jurisdiction by adding up the value of the claim of each person who falls within the definition of [a plaintiff's] proposed class and determine whether the resulting sum exceeds $5 million." *Standard Fire Ins. Co. v. Knowles*, 133 S.Ct. 1345, 1348 (2013). Courts look to the allegations in the complaint in determining the amount in controversy. *LaCross v. Knight Trans. Inc.*, 775 F.3d 1200, 1202 (9th

1  Cir. 2015) ("[O]ur first source of reference in determining the amount in controversy [is] plaintiff's
2  complaint"). "In determining the amount in controversy, the Court accepts the allegations
3  contained in the complaint as true and assumes the jury will return a verdict in the plaintiff's favor
4  on every claim." *Henry v. Central Freight Lines, Inc.*, 692 F. App'x 806 (9th Cir. 2017).

5  17.   Plaintiff seeks the recovery of meal and rest period premium pay, unpaid wages
6  (including overtime wages), itemized wage statement penalties, and waiting time penalties, on
7  behalf of himself and the putative classes. (*See* Complaint.) The Complaint, on its face, satisfies the
8  $5 million threshold for CAFA removal.[1] *See* 28 U.S.C. § 1332(d).

### 1. Relevant Putative Class Data

18.   Plaintiff seeks to certify various classes from May 6, 2016 to the present. From May 6, 2016 to the Notice of Removal, Nestlé Waters employed, in the aggregate, at least 861 non-exempt employees in California who worked approximately 75,226 workweeks or 37,832 pay periods. (DiRienzo Decl. ¶ 6.) Those employees had an average hourly rate of approximately $21.02. (*Id.*) During this period, non-exempt employees received bi-weekly wage statements. (*Id.*)

19.   From May 6, 2017 to the Notice of Removal, Nestlé Waters terminated at least 448 non-exempt employees in California, and their average hourly rate was approximately $21.25. This equals an average daily rate (8 hours) of approximately $170.00. Of the 448 terminated employees, 440 were discharged at least 30 days prior to this Notice of Removal. (DiRienzo Decl. ¶ 7.)

20.   From May 6, 2019 to Notice of Removal, Nestlé Waters issued at least 14,927 wage statements to at least 577 non-exempt employees in California. For removal, any pay periods above 40 for a given employee (i.e., a $3,950 penalty) were excluded, so as not to exceed the maximum statutory penalty alleged by Plaintiff (which Nestlé Waters denies). (DiRienzo Decl. ¶ 8.)

### 2. Meal and Rest Period Premium Pay

21.   Plaintiff alleges the meal and rest class begins May 6, 2016, which is a four-year lookback. (Complaint, ¶ 17(b), (c).)

---

[1] In alleging the amount in controversy for purposes of CAFA removal, Nestlé Waters does not concede in any way that the allegations in the Complaint are accurate, or that Plaintiff is entitled to any of the monetary relief requested in the Complaint. Nor does Nestlé Waters concede that any or all putative class members are entitled to any recovery in this case, or are appropriately included in the Action.

22. Plaintiff's sixth cause of action for violation of the UCL alleges Defendant "engaged and continue to engage in unfair and unlawful business practices in California by practicing, employing, and utilizing the employment practices outlined above, including by: … (b) failing to provide off-duty meal periods to employees who worked 5 hours or longer in one shift and/or pay meal period premiums at the correct regular rate of pay that included all non-discretionary remuneration, in violation of Labor Code §§ 201-203, 226.7, and 512; (c) failing to provide off-duty rest periods to employees who worked 3.5 hours or longer in one shift and/or pay rest period premiums at the correct regular rate of pay that included all non-discretionary remuneration, in violation of Labor Code §§ 201-203 and 226.7." Complaint, ¶ 57.

23. The statute of limitations for a claim under the UCL is four years. Cal. Bus. & Prof. Code § 17208. Under the UCL, an individual may recover unlawfully withheld wages as a form of restitution. *Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 173 (2000). A plaintiff may seek to recover meal or rest period premium pay as a form of restitution under the UCL, under the theory that premium pay constitutes wages. *See Tomlinson v. Indymac Bank, F.S.B.*, 359 F. Supp. 2d 891, 896-97 (C.D. Cal. 2005). Plaintiff thus seeks to certify meal and rest period classes dating back four years, to May 6, 2016. Complaint, ¶ 17(b)-(c).

24. Plaintiff further alleges that Defendant had a ***pattern and practice*** of meal and rest violations, with alleged violations occurring *frequently*. Specifically, Plaintiff alleges "as a ***pattern and practice,*** Defendants require Plaintiff and other employees to carry cell phones and/or handheld computers and respond to calls during meal and rest periods. Plaintiff's meal and rest periods were ***frequently interrupted and shortened*** as a result of being required to respond to these work calls." Complaint, ¶ 23 (emphasis added); *see also id.* ¶¶ 36 ("as a pattern and practice, Defendants required Plaintiff and other employees to carry cell phones and/or handheld computers and respond to calls during meal periods. As a result, *Plaintiff and Class Member's* meal and rest periods were frequently interrupted and shortened by these work calls.") (emphasis added), 41 ("as a pattern and practice, Defendants required Plaintiff and other employees to carry cell phones and/or handheld computers and respond to calls during rest periods. As a result, *Plaintiff and Class*

*Member's* meal and rest periods were frequently interrupted and shortened by these work calls.") (emphasis added). Plaintiff thus seeks relief under the UCL. (*Id.*, ¶ 57.)

25.   From May 6, 2016 to the Notice of Removal, Nestlé Waters employed at least 861 non-exempt employees in California who worked approximately 75,226 workweeks or 37,832 pay periods; and had an average hourly rate of approximately $21.02. (DiRienzo Decl. ¶ 6.) During this period, non-exempt employees were issued wage statements on a bi-weekly basis. (*Id.*)

26.   Nestlé Waters may employ reasonable assumptions based on the Complaint to determine the amount in controversy. *Arias v. Residence Inn By Marriott, Ltd.,* 936 F.3d 920, 927 (9th Cir. 2019) ("[A]ssumptions made part of the defendant's chain of reasoning need not be proven; they instead must only have 'some reasonable ground underlying them.'"). Based on the alleged "pattern and practice" of "frequent" meal and rest period violations, Nestlé Waters utilized an extremely conservative estimate of 25% meal and 25% rest period violation rates (or one meal and one rest violation per employee per week), resulting in a total amount of meal and rest period premium pay in controversy of approximately of **$3,162,500**. (Meal Period: 75,226 work weeks x $21.02 average hourly rate x 4 total shifts per week x 25% violation rate = $1,581,250; Rest Period: 75,226 work weeks x $21.02 average hourly rate x 4 total shifts per week x 25% violations rate = $1,581,250; 1,581,250 + $1,581,250 = $3,162,500).

27.   Similar allegations can support far higher violation rates as a matter of law. The Ninth Circuit supports such assumptions. In *Arias*, the plaintiff alleged that the defendant routinely failed to provide compensation for missed rest breaks, among other claims. The defendant assumed one missed rest break per week (a 20% violation rate). 936 F.3d at 923. The defendant also suggested that assuming three missed rest periods per week (a 60% violation rate) would be conservative and would place $6,466,480 in controversy. *Id.* The Ninth Circuit indicated that the defendant's "assumptions are plausible and may prove to be reasonable in light of the allegations in the complaint." *Id.* at 927. The court made clear that a defendant need not "prove it actually violated the law at the assumed rate." *Id.* ("The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability.") (quoting *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 401 (9th Cir. 2010)).

28.     District courts also support far higher alleged meal and rest period violation rates for purposes of CAFA removal. *See, e.g., Elizarraz v. United Rentals, Inc.*, 2019 WL 1553664, at *3-4 (C.D. Cal. Apr. 9, 2019) ("courts have found violations rates of 50% proper with language such as "policy and practice"); *Alvarez v. Office Depot, Inc.* No. CV177220PSGAFMX, 2017 WL 5952181, at *3 (C.D. Cal. Nov. 30, 2017) (finding reasonable a 60% violation rate for claims relating to missed meal and rest periods when the complaint is indeterminate with respect to violation rates); *Bryant v. NCR Corp.*, 284 F. Supp. 3d 1147, 1151-52 (S.D. Cal. 2018) (accepting 60% violation rate based on alleged "policy and practice" of violations); *Oda v. Gucci Am., Inc.*, No. 2:14-CV-07469-SVW, 2015 WL 93335, at *4-5 (C.D. Cal. Jan. 7, 2015) (upholding assumed 50% violation rate on both meal *and* rest period claims where plaintiffs alleged that "Plaintiffs and the class members sometimes did not receive all of their meal periods in a lawful fashion" and Defendant "maintained a policy or practice of not paying additional compensation to employees for missed, uninterrupted [sic], and/or timely meal and/or rest periods"); *Olson v. Becton, Dickinson & Co.*, No.: 19cv865-MMA (BGS), 2019 WL 4673329, at *5 (S.D. Cal., Sep. 25, 2019) (applying *Arias,* finding "application of a 25% violation rate is reasonable" where there is a "pattern and practice" of alleged meal and rest period violations) (citing *Arias,* 936 F.3d at 927).

### 3.     <u>Waiting Time Penalties</u>

29.     Plaintiff alleges "Defendants' willful failure to provide all overtime wages due and owing to Plaintiff and Class Members upon separation from employment results in a continued payment of wages up to thirty (30) days from the time the wages were due." Complaint, ¶ 34. As a result, he seeks waiting time penalties on behalf of the entire class: "Therefore, *Plaintiff and other members of the Class who have separated from employment* from Defendants are entitled to compensation pursuant to Labor Code § 203." Complaint, ¶ 34 (emphasis added); *see also id.*, ¶¶ 51 (seeking same waiting time penalties for unpaid wages on behalf of "*Plaintiff and the Class Members,*" and noting "*Plaintiff and the Class Members* are entitled to recover" this penalty) (emphasis added), 57, Prayer for Relief ¶¶ 5-8. Plaintiff also seeks the same waiting time penalties on behalf of himself and the putative class due to the alleged failure to provide lawful meal and rest periods referenced above. *Id.* ¶¶ 39 (seeking same waiting time penalties due to unpaid meal period

premium payments), 44 (seeking same for unpaid rest period premium payments), *see also id.* Prayer for Relief ¶¶ 5-8.

30. California Labor Code section 203 provides "[i]f an employer willfully fails to pay … any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days." A three-year statutory period applies to claims for waiting time penalties. *Pineda v. Bank of Am., N.A.*, 50 Cal. 4th 1389, 1398 (2010).

31. From May 6, 2017 to the Notice of Removal, Nestlé Waters terminated at least 448 non-exempt employees in California, of which 440 have been discharged for at least 30 days, (DiRienzo Decl. ¶ 7.) The average hourly rate of these employees was approximately $21.25. (*Id.*) This equals an average daily rate (8 hours) of approximately $170.00. (*Id.*)

32. Therefore, based on Plaintiff's allegations, the amount in controversy for waiting time penalties is at least **$2,244,000** ($21.25 per hour x 8 hours x 30 days x 440 putative class members). *See Crummie v. CertifiedSafety, Inc.*, No. 17-CV-03892-RS, 2017 WL 4544747, at *3 (N.D. Cal. 2017) (finding it "completely reasonable" for the defendant to assume the maximum, 30-day period of waiting time penalties where the allegations supported the assumption); *Marentes v. Key Energy Servs. Cal, Inc.*, No. L13–CV–02067 AWI, 2015 WL 756516, at *9 (E.D. Cal. 2015) (where "wages are alleged to have not been paid, the full thirty days may be used for each of the putative class members.").

### 4. Wage Statement Penalties

33. Plaintiff alleges that Nestlé Waters' wage statements "should have reflected the applicable hourly rates of pay and gross and net wages earned … However, the wage statements provided to Plaintiff and other employees failed to identify such information." Complaint, ¶ 54. He further alleges the "wages [sic] statements identified incorrect wage rates and net and gross wages earned, in violation of Labor Code § 226(a)" and that "such a pattern, practice and uniform administration of corporate policy as described herein is unlawful and creates an entitlement to

recovery by the *Plaintiff and the Class* in a civil action, for all damages or penalties pursuant to Labor Code § 226." Complaint, ¶¶ 54-55 (emphasis added).

34. Plaintiff's wage statement claim incorporates the prior allegations in the Complaint. Complaint, ¶¶ 52, 54. This includes both the alleged underpayment of wages and the alleged meal and rest period violations discussed above. Complaint, ¶¶ 23, 36, 41.

35. A one-year statutory period applies to Plaintiff's claim for wage statement penalties. Cal. Code Civ. Proc. § 340(a); *Falk v. Children's Hospital Los Angeles*, 237 Cal.App.4th 1454, 1469 (2015). Labor Code § 226(e) provides for the greater of all actual damages or $50.00 for the initial pay period in which a violation occurred and $100.00 for each subsequent pay period in which a violation occurred, up to $4,000.00 per putative class member. Cal. Lab. Code § 226(e).

36. From May 6, 2019 to the date of removal, Nestlé Waters issued at least 14,927 wage statements to at least 577 non-exempt employees in California. (DiRienzo Decl. ¶ 8.) For purposes of removal, any pay periods above 40 for a given employee (i.e., a penalty of $3,950) were excluded, so as to not exceed the maximum statutory penalty alleged by Plaintiff under Labor Code section 226(e) of $4,000.

37. Based on the above, the total amount of potential wage statement penalties to putative class members in controversy is at least **$1,463,850** (577 wage statements x $50 = $28,850; 14,350 wage statements x $100 = $1,435,000 [$28,850+ $1,435,000 = $1,463,850]). Since each employee's wage statements is capped at 40 for purposes of removal (a penalty of $3,950), the amount in controversy is actually greater than detailed here.

### 5. Attorney Fees

38. Based on the above, Nestlé Waters has demonstrated there is at least **$6,870,350** in controversy ($3,162,500 in meal and rest premiums + $2,244,000 in waiting time penalties + $1,463,850 in wage statement penalties = $6,870,350).

39. Plaintiff also seeks attorney fees in connection with the above claims. Complaint, ¶¶ 33, 38, 43, 55, and Prayer for Relief. In the Ninth Circuit, 25% of the total recovery is the "benchmark level" for reasonable attorney fees in class action cases. *Garibay v. Archstone Communities LLC*, 539 F. App'x 763, 764 (9th Cir. 2013). Using this 25% benchmark, courts have

included attorney fees for 25% of the total recovery in determining the amount in controversy under CAFA. *Id.* (contemplating inclusion of 25% of total recovery in attorney fees under CAFA); *Rwomwijhu v. SMX, LLC*, No. CV1608105ABPJWX, 2017 WL 1243131, at *6 (C.D. Cal. Mar. 3, 2017) (including fees in calculation, noting that "courts in the Ninth Circuit, including this one, have allowed an estimated fee award of 25% of a plaintiff's damages in calculating the amount in controversy under CAFA"); *Altamirano v. Shadow Indus., Inc.*, No. C-13-0939 EMC, 2013 WL 2950600, at *13 (N.D. Cal. Jan. 14, 2013) (including 25% attorney's fees to increase the amount-in-controversy to above $5 million CAFA threshold).

40. Assuming an award of attorney fees in the benchmark amount of 25% of the total recovery, the amount in controversy for such fees is **$1,717,604** ($6,870,414 x 0.25 = $1,717,604).

### 6. Summary

41. Based Plaintiff's allegations, the amount in controversy is at least **$8,587,937.50** ($6,870,350 + $1,717,587.50 = $8,587,937.50). Even excluding Plaintiff's other claims, including overtime wages, minimum wages, and unpaid sick pay, the Complaint easily satisfies the $5 million threshold.

## IV. VENUE IS PROPER IN THIS COURT

42. Under 28 U.S.C. § 1441(a), this Notice of Removal is filed in the district court of the United States in which the Action is pending. The Kern County Superior Court is within the Eastern District of California. 28 U.S.C. § 84(b). Therefore, venue is proper in this Court because it is the district and division embracing the place where the Action is pending. 28 U.S.C. § 1441(a).

43. Under 28 U.S.C. § 1446(a), this Notice of Removal is accompanied by the Declarations of Nancy DiRienzo and Jesse Ferrantella, and Exhibits 1 to 3, which constitute a copy of all processes, pleadings, and orders provided to Nestlé Waters.

44. As required by 28 U.S.C. § 1446(b) and Federal Rule of Civil Procedure 6(a), this Notice of Removal was filed timely as Plaintiff served his Complaint on November 13, 2020. (Ferrantella Decl. ¶ 3, Ex. 2.)

45. As required by 28 U.S.C. § 1446(d), Nestlé Waters provided Notice of Removal to Plaintiff through his attorneys of record.

46. As required by 28 U.S.C. § 1446(d), a copy of the original Notice of Removal will be filed with the Superior Court of the State of California, for the County of Kern.

47. If this Court has a question regarding the propriety of this Notice of Removal, Nestlé Waters requests it issue an Order to Show Cause so it may have an opportunity to more fully brief the grounds for this removal.

## V.   CONCLUSION

48. For the foregoing reasons, Nestlé Waters removes this putative class action to the United States District Court for the Eastern District of California.

DATED: December 14, 2020

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By: /s/ *Spencer C. Skeen*
    Spencer C. Skeen
    Jesse C. Ferrantella
    Attorneys for Defendant NESTLÉ WATERS NORTH AMERICA, INC.